Carmen GALARZA, Plaintiff, Appellant,

v.

Dr. Cecil ZAGURY, Defendant, Appellee.

No. 82–1449.

United States Court of Appeals,
First Circuit.

Argued Nov. 3, 1982.

Decided March 17, 1983.

Wilfredo A. Geigel, Santurce, P.R., for appellant.

Angel R. De Corral Julia, San Juan, P.R., with whom Law Offices of Miranda, Cardenas, De Corral & Rodriguez Suris, San Juan, P.R., were on brief, for appellee.

Before BOWNES, BROWN ** and BREYER, Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

The issue presented in this case involves the proper interpretation of the medical malpractice statute of limitations of Puerto Rico. The district court granted a motion to dismiss this medical malpractice action on the ground that it was time-barred by this statute of limitations.[1] After the dismissal, the plaintiff below brought this appeal.

At the time the district court granted the motion, the following facts were not disputed by plaintiff-appellant, Ms. Carmen Galarza, and were before the district court.

Ms. Galarza underwent a perianal fistulectomy performed by the appellee, Dr. Cecil Zagury, on November 29, 1977, in Puerto Rico. During this surgery, Dr. Zagury lacerated and damaged her sphincter muscle. As a result, she suffered "continuous fecal incontinence" from the time of the operation until she underwent corrective surgery by another surgeon.

For a number of months after the operation, Dr. Zagury continued to treat Ms. Galarza. She complained to him of her

---

1. The district court, although it did not so state, obviously treated the motion to dismiss as a motion for summary judgment as is permitted by Rule 12(b), Fed.R.Civ.P.

incontinence problem almost immediately, but he assured her that everything was normal and that healing would take some time. Nevertheless, she continued to complain to him.

Ms. Galarza visited her gynecologist, Dr. Natalio Bayonet, for an examination during January 1978, about two months after the operation. He asked her about her problem, and she told him that she had been suffering from incontinence since the operation. Dr. Bayonet immediately called Dr. Zagury, and after the conversation, Dr. Bayonet sent her to see Dr. Zagury. She did so and Dr. Zagury told her not to see Dr. Bayonet again.

On June 20, 1978, Dr. Zagury performed a second operation, apparently for the purpose of correcting the incontinence problem. But the problem continued, and in September 1978, Ms. Galarza visited Dr. Zagury for the last time and informed him that she was going to consult her doctors in New York.

Beginning on October 12, 1978, Ms. Galarza received evaluation and treatment in New York City. She then found out for the first time that her incontinence was the result of negligence of Dr. Zagury in performing the operation when one of her New York doctors so informed her in February or March 1979.

On July 31, 1979, Ms. Galarza filed this medical malpractice suit against Dr. Zagury.

The applicable statute that is before us for interpretation reads in relevant part:

The action for alleged damages for malpractice shall commence, irrespective of any provisions in other acts, within one year from the date of the damage giving rise to the action occurred, or within one year from the time the damage was discovered or should have been discovered with due diligence. In no case may the action be instituted after two years from the date of the damage giving rise to the cause of action occurred.

In those actions covered by this section in which it is shown that because of fraud, concealment or misrepresentation of facts the discovery of the damage was prevented within the period of two years, the prescription term shall be extended indefinitely.

P.R.Laws Ann. tit. 26, § 4109 (Supp.1981).

Pretermitting for the moment the meaning of "damage" as used in this statute of limitations, we conclude that the statute should be construed as follows:

1. If the damage was or should have been discovered by Ms. Galarza at the time it occurred, the claim would be barred one year from the time the damage occurred.

2. If the damage was not and should not have been discovered by Ms. Galarza at the time it occurred, but was discovered or should have been discovered within two years of the time it occurred, the claim would be barred one year after it was or should have been discovered provided that in any event the claim would be barred two years after the time it occurred.

3. If the damage was not discovered and should not have been discovered by Ms. Galarza, because of fraud, concealment or misrepresentation of facts, within two years of the time it occurred, then the claim is never barred.

However we define "damage" for purposes of this limitations statute, the second paragraph of the statute quoted above could not be applicable here since Ms. Galarza filed her lawsuit, setting out her malpractice claim, within two years of the date of the surgery.

Ms. Galarza contends that "damage" within the meaning of this malpractice limitations statute and in this context includes all of the following facts: (a) that incontinence followed the surgery plus (b) that the incontinence was caused by laceration of the sphincter muscle that occurred during the surgery plus (c) that Dr. Zagury was guilty of negligence in so lacerating the sphincter muscle. Ms. Galarza further contends that she neither knew nor should have known of the "damage," as so defined, until she learned of Dr. Zagury's negligence after she received evaluation and treatment

in October 1978. Thus, Ms. Galarza contends, her claim is not barred since she filed this action on July 31, 1979, within one year of the time she knew or should have known of Dr. Zagury's negligence.

Dr. Zagury contends, on the other hand, that "damage" within the meaning of this malpractice limitations statute and in this context includes only the following fact(s): (a) that incontinence followed the operation plus (at the most) (b) that the incontinence was caused by the laceration of the sphincter muscle that occurred during surgery. Dr. Zagury points out that, as is admitted, Ms. Galarza was aware of her incontinent condition shortly after the surgery. Dr. Zagury further *contends* that on June 9, 1978, Ms. Galarza received notice that her incontinence was caused by damage to the sphincter muscle that occurred during surgery, because on that date she received from Dr. Bayonet a certificate so stating, which she filed with the Social Security Administration and was granted benefits.[2] Thus, Dr. Zagury contends, Ms. Galarza's claim is barred since she filed the action on July 31, 1979, which is more than one year after she knew of her incontinence and after she knew or should have known that such was caused by laceration of her sphincter muscle that was done during the surgery.

We conclude, for reasons hereinafter stated, that "damage" within the meaning of this limitations statute does not include the presence of negligence or malpractice. Rather, we believe that, as applied to this factual situation, Ms. Galarza can be said to have been damaged because of the incontinence that she suffered following the surgery and because such was caused by laceration of the sphincter muscle by Dr. Zagury during surgery.

The problem presented here has been described in very general terms as follows:

In determining the proper event which starts the period of limitation running against a malpractice action, the courts are confronted with two very basic, yet conflicting policies: on the one hand the policy of protecting a practitioner against the danger of stale lawsuits involving the dangers of missing witnesses and errors in memory in recollecting pertinent facts; on the other hand, the basic policy of protecting patients against the negligence of medical practitioners which often is difficult to discover within the statutory period of limitation. This conflict in basic policies has resulted in a conflict in the rulings of the courts which can be explained only partly by differences in the language of the pertinent statutes.

It has been said that the test to determine when the statute of limitations begins to run against an action against a physician sounding in tort is whether the act causing the damages does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of the plaintiff. However, there is also a considerable amount of authority to the effect that the period of limitations does not commence to run until discovery of the injury by the patient.

61 Am.Jur.2d, *Physicians, Surgeons, Etc.* § 318 at 469 (citations omitted).

We are not, however, presented with a question whether the statute began to run only after Ms. Galarza "discovered," for the statute by its terms requires "discovery." Our question is: what must Ms. Galarza have known or should have known to start the statute running, or, stated differently, what is damage within the meaning of the statute?

Counsel have advised the court that there is no legislative history that would be helpful to the court in construing this statute, and counsel have not cited any cases from Puerto Rico that would throw light on this recently enacted statute.

We believe that *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), provides helpful guidance in analyzing this case. There an action was brought against the United States by Kubrick, a veteran, following treatment in a Veterans

---

**2.** This certificate, however, is not a part of the    record in this case.

Administration hospital. The government contended that the claim was barred by the limitations provision in the Federal Tort Claims Act, 28 U.S.C. § 2401(b), which requires that a claim be presented in writing to the appropriate federal agency "within two years after such claim accrues." Kubrick contended that the claim was not time-barred because the statute did not begin to run until he knew or should have known that the government physicians were guilty of negligence in treating him. As stated there by the Court:

> The issue in this case is whether the claim "accrues" within the meaning of the Act when the plaintiff knows both the existence and the cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice.

444 U.S. at 113, 100 S.Ct. at 354.

The Court concluded that, under the aforesaid statute, the limitations period began to run when the plaintiff knew of the existence and the cause of his injury. In this connection, the Court said:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.

*Id.* at 122, 100 S.Ct. at 359.

The Court then concluded:

> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government. If there exists in the community a generally applicable standard of care with respect to the treatment of his ailment, we see no reason to suppose that competent advice would not be available to the plaintiff as to whether his treatment conformed to that standard. If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course, he may be incompetently advised or the medical community may be divided on the crucial issue of negligence, as the experts proved to be on the trial of this case. But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*Id.* at 123–124, 100 S.Ct. at 360 (footnote omitted).

It appears to us that the plaintiff in *Kubrick* had a stronger position in his contention as to the construction of the Federal Tort Claims Act than does Ms. Galarza in the instant case. It is more plausible to argue that the word "claim" includes the notion of negligence or malpractice than, as

is argued here, the word "damage" includes such notion.

We therefore agree with Dr. Zagury's contention that "damage" within the meaning of this statute does not include the presence of negligence or malpractice and that Ms. Galarza incurred "damage" if her sphincter muscle was lacerated during surgery causing her incontinence. We, however, disagree with Dr. Zagury that, on the record presented on his motion for summary judgment, it was without dispute that Ms. Galarza learned or should have learned on June 9, 1978 that her incontinence was due to injury to the sphincter muscle done during surgery. The document upon which Dr. Zagury relies to establish such knowledge or notice is not a part of the record in this case.[3]

Accordingly, we conclude that the district court erred in granting summary judgment to Dr. Zagury. The judgment of the district court is therefore vacated and the cause is remanded for further proceedings not inconsistent with this opinion.