**Carmen GALARZA, Plaintiff,**

v.

**Dr. Cecil ZAGURY, Defendant.**

**Civ. No. 79–1725 HL.**

United States District Court,
D. Puerto Rico.

Nov. 3, 1983.

Wilfredo Géigel, Santurce, P.R., for plaintiff.

Angel R. de Corral Juliá, Miranda-Cárdenas, de Corral & Rodríguez, Old San Juan, P.R., for defendant.

## MEMORANDUM OPINION

LAFFITTE, District Judge.

On March 17, 1983, the Court of Appeals vacated the summary judgment entered by this Court to defendant Dr. Cecil Zagury. The Appellate Court reasoned that on the record presented on defendant's motion for summary judgment there was a genuine issue of facts as to the date plaintiff learned or should have learned that her incontinence was due to injury to the sphincter muscle done during surgery. The Court of Appeals further noted that

the document upon which defendant relied to establish such knowledge was not a part of the record.[1] After mandate, the case was set for trial on December 12, 1983, following various interlocutory proceedings in which the Court denied defendant's request to file a second motion for summary judgment, predicated on a sworn statement by Dr. Natalio Bayonet, to be produced by defendant.[2]

Upon assignment of this case to the undersigned Judge, an order was entered on October 5, 1983, scheduling a status conference for October 13, 1983. The parties were ordered to produce at said conference copy of Dr. Bayonet's letter dated June 9, 1978. At the status conference counsel for defendant expressed that he had been unable to obtain copy of Dr. Bayonet's letter. On the other hand, counsel for the plaintiff stated his desire to have the issue of the statute of limitations decided "to avoid unnecessary expenses."[3] Whereupon, the Court set an evidentiary hearing on the statute of limitations issue on October 28, 1983, and further ordered defendant to furnish plaintiff forthwith copy of Dr. Bayonet's sworn statement.

At the evidentiary hearing, there were present Dr. Bayonet and plaintiff, Carmen Galarza. At the outset, counsel for defendant explained that he had communicated with the Social Security Administration, but was informed that Dr. Bayonet's letter had not been located as of the date of the hearing.

Dr. Bayonet was the only witness to testify at the hearing. Plaintiff, although present, did not take the witness' stand. Dr. Bayonet's undisputed testimony establishes the following facts:

1. Dr. Bayonet is a physician specializing in Obstetrics and Gynecology and was plaintiff's attending physician from October 3, 1977 until 1978. On her first visit,

---

1. 702 F.2d 29, 32–33.

2. At a pretrial conference held on August 16, 1982, defendant was ordered to notify plaintiff

with a copy of Dr. Bayonet's letter of June 9, 1978, to the Social Security Administration.

3. Minutes of Status Conference in Chambers.

Dr. Bayonet performed an examination and found that plaintiff had a swollen bartholin gland on the left side of the perianal area. Three days later, October 6, 1977, plaintiff was admitted to the Professional Hospital where Dr. Bayonet drained an abscess of the bartholin gland.

2. Thereafter, plaintiff was examined weekly by Dr. Bayonet. She continued to have drainage from the surgical area, and had a fistular tract from the area of the bartholin cyst that she had been operated on, down toward the perianal and into the rectal area. At that point in time, Dr. Bayonet decided to refer plaintiff to Dr. Zagury for examination and consultation. Dr. Zagury decided to have plaintiff admitted to the Professional Hospital for further surgery, this time to be performed by Dr. Zagury. Surgery was performed on November 29, 1977. Dr. Bayonet was present during surgery as an assistant to Dr. Zagury.

3. On January 30, 1978, plaintiff made her first post-operative visit to Dr. Bayonet. At this time plaintiff complained to him that she was incontinent and could not hold back her stool. Dr. Bayonet examined plaintiff and found she had poor muscle tone in the anal sphincter. Dr. Bayonet testified that: "And I explained to her that due to surgery, the muscle was weakened, she could not perform a stool function correctly due to the weakness resulting from surgery."

4. On June 9, 1978, plaintiff visited Dr. Bayonet's office again. She was still complaining of being incontinent. Dr. Bayonet stated: "I once again explained to her that following the surgery the muscle functions of the sphincter was weak and that she was having trouble from this." Plaintiff then asked Dr. Bayonet to write a letter to the Social Security Administration explaining what had occurred during surgery, so that she could apply for *disability* benefits. Dr. Bayonet complied with plaintiff's request and handed her a medical certificate in his own handwriting because his secretary was sick. Accordingly, no copy was made.

5. Dr. Bayonet made clear to plaintiff not later than June 9, 1978, and as early as January 30, 1978, that her incontinent condition, which plaintiff complained of, was due to the fact that she had been left with a weakened muscle and could not stool properly as a result of the surgery performed by Dr. Zagury on November 29, 1977.

6. Dr. Bayonet did not tell plaintiff, nor led her to believe that Dr. Zagury incurred any negligence.

At the closing of the hearing, the undersigned Judge ruled from the bench that the statute of limitations had not run on the assumption that "within one year from the time damage was discovered", within the meaning of 26 LPRA 4109, included awareness or knowledge of negligence or malpractice. After further research and close examination of two cases handed down by the Puerto Rico Supreme Court[4] construing Section 4109, the Court finds its previous bench ruling not to be the correct approach to the sound resolution of this issue.

In *Ortiz v. Municipality of Orocovis*, 82 JTS 143, plaintiff was treated at the Orocovis Health Center on July 25, 1977, for wounds received while driving his motorcycle. Although he told the doctor that he could not move his left arm, the latter told him that there was no fracture and sent him home without ordering X-rays. Since he could not stand the pain, plaintiff went to a hospital in Aibonito on August 4, 1977, where X-rays were taken. He was there informed of a fracture in his left arm and also of a possible permanent injury due to the delay in placing the injured arm in a

4. At page 31 of 702 F.2d, the Appellate Court made reference to counsel having cited no cases from Puerto Rico on this issue. However, since October 29 and November 15, 1982, two decisions were handed down by the Puerto Rico Supreme Court construing Section 4109. See, *Juan José Ortiz v. Municipality of Orocovis*, 82

cast.[5] The Puerto Rico Supreme Court said:

"Plaintiff is a science and mathematics teacher, with a Bachelor of Arts degree (Education). On page 5 of his brief, he admits that on August 4, 1977 he learned of defendant's negligence which, as he expressed, consisted of 'having to put a cast and not doing so.' He readily admits that he *had discovered the damage* at that time with the optimum certainty of a diagnosis and medical-criteria. That knowledge or discovery is the starting point of the period of limitation, which in this case is accepted by the cited special law which categorically fixes the term 'irrespective of any provisions in other acts.' One should keep in mind that defendant's right to feel free from a claim or proceeding once the term set by law has run—without the filing of an action—is as important as the aggrieved party's right to *timely* file an action. The imponderable elements which arise as to the duration of the term, such as ignorance of the amount of the damage or the final result of a negligent act impairs the essential quality of fixedness and certainty of the period of limitation which was so wisely safeguarded by our case law in *González v. Perez*, 57 P.R.R. 843, 850 (1941); *Cruz v. González*, 66 P.R.R. 203 (1946); *Sánchez v. Cooperative Azucarera*, 66 P.R.R. 330, 333 (1946). No case, no matter the degree of spontaneous sympathy and solidarity of the trier with regard to human sufferings, should provoke the collapse of a universal guiding norm of 'all kinds of rights derived from social relations and the conditions in which life develops ...' *González, supra* at 850. The need of certainty, which is the lifeblood of civil law institutions, requires the exclusion of evasive factors, wherever possible, in the fixing of a period of limitation.

"Once plaintiff had knowledge of the damage he could not wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment. Castán Tobeñas as well as Scaevola incorporate into their texts the Judgment of February 13, 1932, to wit: In actions of civil liability the period of limitation starts to run from the moment the aggrieved party had knowledge of the damage, although he need not know the amount thereof. This principle of the aggrieved party's knowledge is not undermined by the mere fact that he is ignorant of the amount or scope of the injury suffered. The quantitative fixing or setting of damages is a subject which can wait the execution of the judgment.

"This is not a case of an incipient or latent injury, not identifiable until the one year period of limitation has run out. The injury was already perceptible when on August 4, 1977, plaintiff was informed in plain everyday language at the Menonita Hospital that he had been a victim of medical malpractice in the Health Center because since no X-rays were taken they did not discover the fracture and failed to put his arm in a cast. The one-year period to bring the action had already run out when the aggrieved party filed a complaint on December 1, 1978." (Pages 2–4 of official Supreme Court translated opinion.)

In the case of *Ivelisse Rodríguez v. Dr. Armando Barreto*, 82 JTS 152 and no. 1, the Puerto Rico Supreme Court, on a certified question of law from this Court regarding 26 LPRA 4109, construed the history of Article 41.090 of the Insurance Code and concluded:

"The traditional doctrine in North American law with regard to this type of action was that the running of a statute of limitations began from the moment the damage occurred. If the damage was discovered after the statute has run, the aggrieved party was bereft of reme-

---

JTS 143; and *Ivelisse Rodríguez v. Dr. Armando Barreto*, 82 JTS 152.

5. Plaintiff had filed the complaint on December 1, 1978, more than a year after he learned of the damage on August 4, 1977.

dy. W.L. Prosser, *Handbook of the Law of Torts* 144, 4th ed., West Publishing Co., St. Paul, Minn. (1971). Several states will abide by this rule. 1 D.W. Louisell and H. Williams, *Medical Malpractice* 13–56 et seq., sec. 13.15, Matthew Bender, N.Y. (1981).

"The rule is essentially different from the civil law rule. Article 1868 of our Civil Code, 31 L.P.R.A. § 5298, decrees, for example, that the period to file an action for obligations arising from fault or negligence runs out after the lapse of one year 'from the time the aggrieved person had knowledge thereof.'

"State courts and legislatures have for some time been moving toward the creation of a standard parallel to the above-cited standard. The situation at present has been described as follows, American Law Institute, *Restatement of the Law, Second: Torts 2d*, sec. 899, comment e, pp. 444–45, American Law Institute Publishers (1979):

'One group of cases in which there has been extensive departure from the earlier rule that the statute of limitations runs although the plaintiff has no knowledge of the injury has involved actions for medical malpractice ... In a wave of recent decisions these various devices [those created to avoid the application of the earlier rule] have been replaced by decisions meeting the issue directly and holding that the statute must be construed as not intended to start to run until the plaintiff has in fact discovered the fact that he has suffered injury or by the exercise of reasonable diligence should have discovered it...'

See also: Prosser, *loc. cit.*, Sacks, *Statutes of Limitations and Undiscovered Malpractice*, 16 Clev.Mar.L.Rev. 65 (1967); Note, *Medical Malpractice—Statute of Limitations Begins to Run When the Patient Discovers He Has Been Injured*, 30 Ohio S.L.J. 425 (1969); Lambert, *Comments on Recent Important Personal Injury (Tort) Cases*, 28 N.A.C.C.A.L.J. 63, 158 et seq. (1961).

Thirty-two jurisdictions in the United States presently use the discovery of damage as the starting point for the statute to run and several of them add on the need of exercising reasonable diligence to discover the damage. Louisell and Williams, *loc. cit.* With regard to the federal rule, see: *United States v. Kubrick*, 444 U.S. 111 [100 S.Ct. 352, 62 L.Ed.2d 259] (1979).

"Thus we can observe that the phrase 'from the time the damage was discovered or should have been discovered with due diligence,' used in art. 41.090 of our Insurance Code, as amended, has as its source the development of North American law commented above.[1]

---

"[1] There is no discernible difference between the criteria of 'the time the damage was discovered' and the civil law rule: 'from the time the aggrieved person had knowledge thereof.' Consequently, the gloss on art. 1868 of the Civil Code is of great help for the interpretation of said section of the Insurance Code. See: *González v. Pérez*, 57 P.R.R. 843 (1941); *Cruz v. González*, 66 P.R.R. 203 (1946); *Rivera Encarnación v. E.L.A.*, 113 D.P.R. —— (1982); Q.M. Scaevola, 32–2 *Código Civil* 861, Reus Ed., Madrid (1965); J. Castán Tobeñas, 1–2 *Derecho Civil Español, Común y Foral* 963, Reus Ed., Madrid (1978); A. Borrell Macía, *Responsabilidades Derivadas de Culpa Extracontractual Civil* 346, Bosch Ed., Barcelona (2d ed. 1958). The reference contained in the Insurance Code with regard to the time that the damage 'should have been discovered with due diligence' could naturally tend to give way to different effects under given circumstances than what is provided in the Civil Code." (Pages 3–5 of official Supreme Court translated opinion.)

The Court of Appeals, writing through a visiting Circuit Judge and without the benefit of the Puerto Rico Supreme Court opinions, arrived at the correct result when it concluded, based on *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), that "damage within the meaning of this limitation statute does not include the presence of negligence or malpractice." *Id.* at p. 31. Since Article 41.090 of the Insurance Code, 26 LPRA 4109, has as its source the North American law which is likewise the federal rule, *Ku-*

*brick, supra,* the conclusion is inescapable that the starting point for the statute to run is the discovery of damage.[6] In other words, all roads lead to Rome.

Here, as in *Ortiz v. Municipality of Orocovis, supra,* plaintiff learned, both on January 30 and June 9, 1978, with the certainty of medical criteria, that her incontinent problem had its source in the surgery performed by Dr. Zagury, which left her with a weakened sphincter muscle. This was explained to her by Dr. Bayonet not once, but twice. The testimony of Dr. Bayonet filled the gap to establish plaintiff's knowledge. Moreover, the fact that plaintiff requested and obtained from Dr. Bayonet a medical certificate concerning her "disability" as a result of surgery performed on her, leaves no room for speculation as to the knowledge that her incontinence was due to injury to the sphincter muscle done during surgery.

This Court concludes that as of June 9, 1978, plaintiff knew of the existence and the cause of her injury. The complaint, filed on July 31, 1979, is time-barred pursuant to 26 LPRA 4109. *Ortiz v. Municipality of Orocovis, supra; Rivera Encarnacion v. Commonwealth of Puerto Rico, supra; Rodríguez v. Dr. Armando Barreto, supra; United States v. Kubrick, supra.*

The Clerk shall enter judgment dismissing the complaint.

---

**6.** See, also, *Iluminada Rivera Encarnación v. Commonwealth of Puerto Rico, et al.,* 82 JTS 136