**Carmen GALARZA, Plaintiff, Appellant,**

v.

**Dr. Cecil ZAGURY, Defendant, Appellee.**

**No. 83–1958.**

United States Court of Appeals, First Circuit.

Argued June 4, 1984.

Decided July 18, 1984.

Wilfredo A. Geigel, Santurce, P.R., for plaintiff, appellant.

Angel R. De Corral Julia, San Juan, P.R., and Law Offices of Miranda Cardenas, De Corral & Rodriguez, San Juan, P.R., on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, STEWART,[*] Associate Justice (Retired), and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This diversity case is before us for the second time on a question of the application of Puerto Rico's statute of limitations governing medical malpractice. In the previous appeal we vacated the district court's order of dismissal and remanded for further proceedings. *Galarza v. Zagury*, 702 F.2d 29 (1st Cir.1983). Upon reconsideration in light of our opinion, the district court again ordered a judgment of dismissal from which plaintiff appeals. 574 F.Supp. 875 (D.P.R.1983). We quote the relevant facts from our prior opinion:

> Ms. Galarza underwent a perianal fistulectomy performed by the appellee, Dr. Cecil Zagury, on November 29, 1977, in Puerto Rico. During this surgery, Dr. Zagury lacerated and damaged her sphincter muscle. As a result, she suffered "continuous fecal incontinence" from the time of the operation until she underwent corrective surgery by another surgeon.
>
> For a number of months after the operation, Dr. Zagury continued to treat Ms. Galarza. She complained to him of her incontinence problem almost immediately, but he assured her that everything was normal and that healing would take some time. Nevertheless, she continued to complain to him.
>
> Ms. Galarza visited her gynecologist, Dr. Natalio Bayonet, for an examination during January 1978, about two months after the operation. He asked her about her problem, and she told him that she had been suffering from incontinence since the operation. Dr. Bayonet immediately called Dr. Zagury, and after the conversation, Dr. Bayonet sent her to see Dr. Zagury. She did so and Dr. Zagury told her not to see Dr. Bayonet again.
>
> On June 20, 1978, Dr. Zagury performed a second operation, apparently for the purpose of correcting the incontinence problem. But the problem continued, and in September 1978, Ms. Galarza visited Dr. Zagury for the last time and informed him that she was going to consult her doctors in New York.
>
> Beginning on October 12, 1978, Ms. Galarza received evaluation and treatment in New York City. She then found out for the first time that her incontinence was the result of negligence of Dr. Zagury in performing the operation when

* Of the Supreme Court of the United States, sitting by designation.

one of her New York doctors so informed her in February or March 1979.

On July 31, 1979, Ms. Galarza filed this medical malpractice suit against Dr. Zagury.

702 F.2d at 29–30.

The relevant statute of limitations provides that,

The action for alleged damages for malpractice shall commence, irrespective of any provisions in other acts, within one year from the date of the damage giving rise to the action occurred, or within one year from the time the damage was discovered or should have been discovered....

In those actions covered by this section in which it is shown that because of fraud, concealment or misrepresentation of factors the discovery of the damage was prevented ... the prescription term shall be extended indefinitely.

P.R.Laws Ann. tit. 26, § 4109 (Supp.1982). In the previous appeal the parties cited no cases in which the Supreme Court of Puerto Rico had construed this provision. Thus while the controlling law is of course that of Puerto Rico, we felt obliged to address the proper interpretation of the term "damage" as a question of first impression:

We conclude, for reasons hereinafter stated, that "damage" within the meaning of this limitations statute does not include the presence of negligence or malpractice. Rather, we believe that, as applied to this factual situation, Ms. Galarza can be said to have been damaged because of the incontinence that she suffered following the surgery and because such was caused by laceration of the sphincter muscle by Dr. Zagury during surgery.

702 F.2d at 31.

In fact, the Supreme Court of Puerto Rico had construed section 4109 prior to our decision. In *Ortiz v. Municipality of Orocovis*, 82 J.T.S. No. 143 (1982), the court had held, similarly to our own decision, that "[o]nce plaintiff had knowledge of the damage he could not wait for his injury to reach its final degree of development and postpone the running of the period of limitations according to his subjective appraisal and judgment." The court did not, however, discuss the question of how much the plaintiff had to know about the likely author and precise nature of the injury in order to be said to have had knowledge of the damage.

The district court, referring to our previous decision, held that "plaintiff learned, both on January 30 and June 9, 1978, with the certainty of medical criteria, that her incontinent problem had its source in the surgery performed by Dr. Zagury, which left her with a weakened sphincter muscle." 574 F.Supp. at 880.

After the district court granted the dismissal, the Supreme Court of Puerto Rico interpreted another Puerto Rico prescription statute as applied to medical malpractice. In *Colon Prieto v. Geigel*, 84 J.T.S. No. 26 (1984), the court faced the question of when the prescriptive period began to run on an action based on a tongue laceration. Colon Prieto had undergone surgery for extraction of four impacted wisdom teeth in November 1971. After the operation he noticed a painful wound on the side of his tongue. He asked his doctor, Dr. Ark, about the wound; Dr. Ark indicated that he had bitten himself while anesthetized and that the pain would soon subside. The pain persisted despite repeated visits by Colon Prieto to Dr. Ark. Finally, sometime after March 1972, Colon Prieto visited a different surgeon, who in turn referred him to a neurosurgeon. In November 1972, Colon Prieto was told the wound was not caused by a bite, but rather was produced by a cut. In September 1973 he filed a malpractice action against Dr. Ark.

The court applied P.R.Laws Ann. tit. 31, § 5298 (1968), which governed medical malpractice actions prior to enactment of P.R. Laws Ann. tit. 26, § 4109 (Supp.1982). Although differently worded, the relevant provision covering initiation of the prescriptive period seems rather similar to section 4109. Under section 5298 the prescriptive period began to run on the malpractice action "from the time the aggrieved person

had knowledge thereof." The court held that the prescriptive period started to run on Colon Prieto's action only when he learned that his injury was caused by a cut rather than a self-inflicted bite as Dr. Ark had said:

In the instant case Colon Prieto realized he had a lesion in his tongue on November 10, 1971. Upon immediately inquiring, his doctor, Dr. Ark, told him that the wound was the result of a bite that he had inflicted upon himself. On various occasions he saw Dr. Ark again. That he continued suffering—as the trial court emphasized—does not mean necessarily that he knew the genesis of the damage. Dr. Ark himself told him and reaffirmed that he would get better. The last time he consulted Dr. Ark, the doctor told him that if the condition continued to come back in four months. It is reasonable to think that Colon Prieto trusted in what his doctor told him since it is the obligation of every doctor to inform the state and clinical prognosis except in situations or cases in which such information makes treatment difficult or worsens the condition of the patient.

In this circumstance knowledge of the damage may not be attributed from the date of the operation. As a patient he trusted his doctor. It was not until he consulted other doctors, in particular Dr. Ramirez De Arellano, that on November 10, 1972 he knew that his lesion was not the result of a bite but of a mutilation of the right lingual nerve. It is at this moment that he knew that the damage was probably caused by the lack of skill of the doctor, Dr. Ark. Under the subjective criterion applicable to actions against doctors, the prescriptive term started on that date and when he filed his suit his cause of action was alive.

84 J.T.S. No. 26 at p.3525–26.[1]

There appears to be some similarity between *Colon Prieto* and the facts before us. Galarza knew she suffered from incontinence after her operation, as Colon Prieto knew his tongue was injured. Galarza's doctor, Dr. Bayonet, informed her that her trouble was due to a weakened sphincter muscle but did not say that the sphincter had been lacerated. Had he done so, this would have shown a more direct causal link between the problem and the surgery and would have been more suggestive of possible malpractice. She continued to see Dr. Bayonet and Dr. Zagury, but the muscle did not strengthen. Finally, she went to outside experts who informed her that the incontinence was due to a sphincter laceration. This mirrors Colon Prieto's discovery of the cause of his injury. To be sure, Dr. Bayonet was not the operating doctor in the present case, but he referred Galarza to Dr. Zagury and participated in the operation as Dr. Zagury's assistant. We believe the analogy between this case and *Colon Prieto* is sufficiently close to warrant vacating and remanding for reconsideration by the district court. In so doing we do not ourselves resolve the issue of when the statute began to run. We leave this, in the first instance, to the district court which should determine whether the principles announced in *Colon Prieto* apply to section 4109, and, if so, whether the statute is or is not a bar. If the court continues to believe it a bar, it should dismiss; if not, the court should proceed with the case.

We note that in our previous opinion we construed discovery of damage to include knowledge "of the existence and the *cause* of the injury." 702 F.2d at 32 (emphasis added). Similarly the Supreme Court of Puerto Rico in *Colon Prieto* stated, " 'For the aggrieved to exercise his action, it is not enough to know that he has been injured, but knowledge of who is the author of the harm is necessary ....' " 84 J.T.S.

---

1. While counsel for appellant undertook to furnish the court with an official translation of *Colon Prieto,* we have not received such a translation. Since this case is before us for the second time, we have expedited this appeal by using our own translation of *Colon Prieto.* On remand, the district court may of course utilize the official translation in its reconsideration and will also be informed by its own knowledge of the Spanish original.

No. 26 at p. 3526 [2] (quoting Borrell y Soler, 1 *Derecho Civil Espanol* 500 (1955)). The facts of *Colon Prieto* make clear that knowledge of the author of the harm means more than an awareness of some ill effects resulting from an operation by a particular doctor. Colon Prieto knew his tongue had been injured during the dental surgery, but was led to believe that he had bitten it and did not know that the doctor himself had cut him. The prescriptive period did not begin to run until he learned that the injury was a cut made by his surgeon. The district court here concluded that the prescriptive period began to run when plaintiff learned "that her incontinent problem had its source in the surgery performed by Dr. Zagury, which left her with a weakened sphincter muscle." 574 F.Supp. at 880. Under the doctrine of *Colon Prieto* mere knowledge that the incontinence stemmed from the surgery may not be enough; the additional knowledge that the incontinence was caused by a sphincter laceration may have been required before the prescriptive period began to run. In any case, this is a matter which the district judge, who is well versed in Puerto Rico law, should now consider with the benefit of the recent *Colon Prieto* opinion.[3]

*Accordingly we vacate the district court's dismissal, and remand for reconsideration in light of the Supreme Court of Puerto Rico's recent interpretation of Puerto Rico law.*

---

2. *See supra* note 1.

3. The district court may, as an alternative, certify the questions presented by this case to the Supreme Court of Puerto Rico although it should only do so, of course, if it is satisfied they fall into the unique category where certification would be appropriate. *See Gual Morales*

*v. Hernandez Vega,* 604 F.2d 730, 732 (1st Cir. 1979). It is not apparent to us at this time that Puerto Rico law is so unclear, particularly in light of *Colon Prieto,* that certification is appropriate, but we leave this to the considered judgment of the district court.