# United States Court of Appeals
## For the First Circuit

No. 01-2296

CARMEN GLORIA SANTOS ESPADA,
Plaintiff, Appellant,

v.

JAIME CANCEL LUGO,
Defendant, Appellee,

C/P CANCEL-DOE; HOSPITAL PAVIA,
Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior District Judge]

Before

Boudin, Chief Circuit Judge,

Lynch, Circuit Judge,

and Shadur,* Senior District Judge

Alexander H. Bopp, with Ernesto G. López Soltero on brief, for appellant.
Mirta E. Rodriguez-Mora for appellee.

December 2, 2002

---

*Of the Northern District of Illinois, sitting by designation.

**SHADUR, <u>Senior District Judge</u>**.  Carmen Gloria Santos Espada ("Santos") brought this diversity-of-citizenship action against Dr. Jaime Cancel Lugo, claiming that Dr. Cancel had committed medical malpractice under Article 1802 of the Puerto Rico Civil Code.  Santos contends that Dr. Cancel acted negligently in performing a modified radical mastectomy that included the excision of 14 lymph nodes, causing lymphedema in her right arm.

When the case went to trial, Dr. Cancel moved under Fed. R. Civ. P. ("Rule") 50(a) for judgment as a matter of law when Santos had completed her proofs and rested.  That motion was granted on statute of limitations grounds, and the action was therefore dismissed.  Santos appeals, and we reverse the district court's judgment and remand for further proceedings in light of this opinion.

## Standard of Review

We review the grant of a Rule 50(a) motion for judgment as a matter of law de novo, using the same standards as the district court (<u>Andrade</u> v. <u>Jamestown Hous. Auth.</u>, 82 F.3d 1179, 1186 (1st Cir. 1996)).  All of the evidence and reasonable inferences drawn from the evidence are thus considered in the light most favorable to nonmovant Santos (<u>id</u>.), and we take that approach in the <u>Facts</u> discussion below.

As for the legal standard to be applied to the facts, <u>Andrade</u>, <u>id</u>. (internal quotation marks omitted) spoke in terms of

the older Rule 50(a) "directed verdict" language (which embodied the same concept) to teach that a "verdict may be directed only if the evidence, viewed from this perspective [most favorable to the nonmovant], would not permit a reasonable jury to find in favor of the plaintiff[ ] on any permissible claim or theory." If instead fair-minded persons could draw different inferences from the evidence presented at trial, the matter is for the jury (Santiago Hodge v. Parke Davis & Co., 909 F.2d 628, 634 (1st Cir. 1990)).

Facts

On May 27, 1997 Santos underwent a right modified radical mastectomy, performed by Dr. Cancel at Hospital Pavia in San Juan, Puerto Rico. That procedure included the removal of remaining breast tissue, as well as the axillary contents of 14 lymph nodes that were free of tumor. Santos was never warned of the risks of removing those axillary contents or of the effects that such a procedure may have, nor was she advised about the appropriate measures to take regarding her arm. Approximately a week after surgery, Dr. Cancel told Santos that 14 lymph nodes had been removed during surgery.

In July 1997 Santos visited Dr. Cancel to inquire about some swelling of her right arm. Dr. Cancel told her that it was nothing. During other July appointments Dr. Cancel never mentioned the possibility of swelling or lymphedema to Santos.

In November 1997 Santos was told that she had lymphedema by a doctor in a Florida hospital. Santos began treatment for lymphedema by December 1997. Next Santos met with a lymphedema specialist in April or May 1998. In the meantime she had communicated with the National Lymphedema Network in 1997, receiving some information about lymphedema.

On July 21, 1999 oncologists at the Veterans Hospital in Tampa, Florida first informed Santos that the procedure used for her intraductal carcinoma, the modified radical mastectomy, was not the recommended procedure. Those physicians also identified the modified radical mastectomy and removal of the 14 lymph nodes as the reason for the development of the lymphedema.

On May 30, 2000 Santos filed a complaint alleging medical malpractice in the course of the May 27, 1997 surgery. Trial by jury began on July 16, 2001. When Santos rested her case, Dr. Cancel moved for dismissal of the action under Rule 50(a) on the grounds that the cause of action was time-barred and, alternatively, that Santos had failed to satisfy her evidentiary burden in her case in chief. In a July 17 order (Santos Espada v. Cancel Lugo, 165 F. Supp. 2d 76 (D.P.R. 2001)) the District Court dismissed the action with prejudice by finding that Santos knew of her injury as early as 1997 or 1998 and also that Santos "should have known during the course of her treatment for lymphedema that the excision of the axillary contents of 14 lymph nodes may not

have been necessary given the nature of [Santos'] breast cancer" (id. at 78).  That order did not address Dr. Cancel's other Rule 50(a) argument that Santos had failed to satisfy her evidentiary burden.

### Statute of Limitations Considerations

This diversity action looks to the Puerto Rico Civil Code, which sets a one-year statute of limitations for personal injury claims (31 P.R. Laws Ann. §5298(2); see also Ramos-Baez v. Bossolo-Lopez, 240 F.3d 92, 93 (1st Cir. 2001)).  That one-year time clock begins to tick on the day after the date of accrual of the claim (Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 175 (1st Cir. 1997)(per curiam)).  Because Santos filed suit on May 30, 2000, its timeliness therefore depends on a date of accrual no later than May 30, 1999.

For accrual purposes, the injured person must have both notice of her injury and knowledge of the likely identity of the tortfeasor (Tokyo Marine & Fire Ins. Co. v. Perez y Cia. de Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998)).  We therefore examine when both of those elements were present in this case.

Notice of an injury occurs when there "exist some outward or physical signs through which the aggrieved party may become aware and realize that [s]he has suffered an injurious aftereffect" (Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir. 1989), quoting Puerto Rico authorities).  Santos gained such

notice of her injury at the latest by November 1997, when the swelling in her arm was diagnosed as lymphedema.

But such a diagnosis of lymphedema is not necessarily sufficient for knowledge that a tortfeasor was involved as well. Colon Prieto v. Geigel, 115 P.R. Dec. 232, 15 P.R. Offic. Trans. 313 (1984) teaches that "not only must the aggrieved person know that [s]he has been injured; [s]he must know who is the author of the injury in order to address the action against him, so [s]he may know who to sue" (15 Offic. Trans. at 330)(internal quotation marks omitted; emphasis in original).  And Galarza v. Zagury, 739 F.2d 20, 24 (1st Cir. 1984) has read Colon Prieto as making "clear that knowledge of the author of the harm means more than an awareness of some ill effects resulting from an operation by a particular doctor."  From that it follows that (Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13-14 (1st Cir. 1997)):

> If a plaintiff is not aware of some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury, the statute of limitation will be tolled.

It was only when Santos knew that the lymphedema may have been caused by an improper surgical procedure that she also had actual knowledge of the possibility that Dr. Cancel was the author of her injury--that is, enough to provide a causal nexus between Dr. Cancel's conduct and the injury.  That knowledge came on July 21, 1999, when Santos first learned that Dr. Cancel's removal of 14 lymph nodes was not a recommended procedure.  And that knowledge

-6-

that Dr. Cancel had increased the likelihood of Santos developing lymphedema meant that the injury could be considered a tort rather than an expected side effect (see, e.g., Villarini-Garcia v. Hospital Del Maestro, Inc., 8 F.3d 81, 85-87 (1st Cir. 1993); Galarza, 739 F.2d at 21-24).

But the limitations period can begin to run not simply when a claimant gains "actual knowledge" but at an earlier date when "by due diligence, such knowledge would likely have been acquired" (Rodriguez-Suris, 123 F.3d at 16, quoting Villarini-Garcia, 8 F.3d at 84). In cases where a tort claim is filed beyond the one-year statutory term, plaintiff bears the burden of proving timeliness by establishing that she lacked the necessary knowledge or imputed knowledge before instituting the action (Torres v. E.I. DuPont de Nemours & Co., 219 F.3d 13, 19 (1st Cir. 2001)). And for that purpose the question whether the plaintiff has exercised reasonable diligence is typically given to the jury, "even where no raw facts are in dispute," because "the issues of due diligence and adequate knowledge are still ones for the jury so long as the outcome is within the range where reasonable men and women can differ" (Villarini-Garcia, 8 F.3d at 87).

Moreover, the statute of limitations can be tolled "[i]f a plaintiff's suspicions that she may have been the victim of a tort are assuaged by the person who caused the injury" (Rodriguez-

-7-

Suris, 123 F.3d at 16, citing Colon Prieto, 15 P.R. Offic. Trans. at 329-30). Finally, such tolling may be halted by further information that renders plaintiff's reliance on those assurances no longer reasonable, so that plaintiff then has an obligation of diligent investigation (Rodriguez-Suris, 123 F.3d at 17).

How do those principles play out in this case? Santos knew shortly after the operation that 14 lymph nodes had been removed and that her right arm was swelling. But she was promptly reassured by Dr. Cancel, the surgeon who had performed the surgery, that the swelling in her arm was nothing and that the incision looked good. Consequently Santos was initially entitled to rely on the analysis from her doctor that the operation had been performed properly.

Because the swelling persisted, however, Santos continued her investigation and discovered that the swelling in her arm was lymphedema. It would surely be permissible for a jury to find that Santos was diligent in her investigation of the cause of her lymphedema by communicating with the National Lymphedema Network and by meeting with other doctors in her attempt to discover the cause of her lymphedema.[1]

---

[1] Because the trial testimony of Santos' expert witness Dr. Robert De Jager (a specialist whose extensive curriculum vitae, included in the record on appeal, reflects credentials that support the district court's Fed. R. Evid. 702 admission of his testimony as an expert), has not been transcribed for inclusion in the appellate record, what is said hereafter in this opinion regarding lymphedema is drawn from Dr. De Jager's Rule 26(a)(2)(B) expert report (included in the pretrial order in the case).

Lymphedema is a possible outcome any time a lymph node is removed, and it is thus a common side effect from breast cancer surgery. Lymphedema can stem from the removal of lymph nodes from a radical mastectomy, either from a single lymph node (as Santos claims is conventional and recommended practice) or from the removal of as many as 14 lymph nodes (as occurred in this case). Hence a jury could reasonably conclude that Santos' investigation into the cause of the lymphedema would not necessarily have triggered further inquiry as to whether the excision of 14 lymph nodes was actionably wrongful.

Here Santos clearly knew more than one year before the suit was filed that a serious and persistent affliction had followed her surgery and that Dr. Cancel was responsible for the surgery. But lymphedema can occur after properly done surgery, and Santos had no reason to know or suspect, until she was so told on July 21, 1999, that less radical surgery had been a reasonable and less risky alternative--or so the jury could permissibly conclude--so the jury did not have to find that the statute barred her claim. It is worth stressing that on somewhat different facts, an unexpected adverse consequence from an operation could well be sufficiently suspicious that a plaintiff would have to pursue that possibility diligently at the risk of being barred by the statute of limitations.

We should not be misunderstood as signaling the actual outcome of the necessary factual inquiry. It is rather that Santos is entitled to the benefit of her version of events in resisting a Rule 50(a) judgment as a matter of law. And on that version a reasonable factfinder could determine that Santos, despite the exercise of due diligence in investigating and treating her lymphedema, obtained the requisite knowledge only when she learned of Dr. Cancel's possible malpractice on July 21, 1999. Because July 21, 1999 is less than one year before the May 30, 2000 date of filing, Santos' claim is not barred by limitations as a matter of law.

### Santos' Appellate Relief

As stated earlier, Dr. Cancel's Rule 50(a) motion at the conclusion of Santos' case in chief was predicated not only on limitations grounds but on a claimed failure of proof sufficient to justify submission to the jury. From Dr. De Jager's report (see n.1) there may well have been enough evidence to support such submission, but the district judge did not reach that issue, and it has not been briefed before us. Hence a determination of that issue by the district court on remand is called for.

## Conclusion

We therefore REVERSE the order of the district court granting Dr. Cancel's Rule 50(a) motion for judgment as a matter of law. We REMAND the case to the district court for further proceedings in light of this opinion.