# United States Court of Appeals
## For the First Circuit

No. 19-1956

LUZ B. MELÉNDEZ COLÓN; MILTON RAMOS MELÉNDEZ

Plaintiffs, Appellants,

v.

JULIO ROSADO SÁNCHEZ; SINDICATO DE ASEGURADORES PARA
LA SUSCRIPCION CONJUNTA DE SEGUROS DE RESPONSABILIDAD
PROFESIONAL MEDICO HOSPITALARIA (SIMED)

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann,* Judge.

Manuel San Juan, with whom Héctor M. Alvarado-Tizol, Mariela
Maestre-Cordero, and Law Offices of Manuel San Juan were on brief,
for Appellants.
Jeanette López de Victoria, with whom Oliveras & Ortiz, PSC
was on brief, for Appellees.

April 21, 2021

     * Of the United States Court of International Trade, sitting
by designation.

**KATZMANN, Judge.** This diversity case concerns a medical malpractice claim filed by Luz Meléndez Colón and her son Milton Ramos Meléndez ("Plaintiffs") against Dr. Julio Rosado Sánchez and his insurer, SIMED ("Defendants").[1] The appeal raises questions regarding the bounds of constructive knowledge under Puerto Rico law in the context of a statute of limitations where the one-year clock for timely filing of a lawsuit begins to tick on the date of the accrual of the claim. Here, as in other such cases, knowledge by the plaintiffs of the injury and the person who caused it is key to evaluating whether a claim has been filed before the clock has run out. At what point can a plaintiff claiming medical malpractice no longer reasonably be found to lack constructive knowledge of a potential tort committed against her more than a year before the filing? To that end, what diligence is required on the part of a reasonable person whose injuries improve upon securing treatment by a medical professional other than the alleged tortfeasor?

In the case before us, the district court set aside a jury verdict for Plaintiffs, granted Defendants' motion for judgment as a matter of law, and dismissed the case as time-barred

---

[1] The action below included Dr. Rosado's wife and their conjugal partnership as co-defendants, but both were dismissed prior to this appeal on March 13, 2019. The initial suit also listed Insurance Company A-Z as a placeholder defendant but Plaintiffs have since identified SIMED as Dr. Rosado's insurer.

- 2 -

upon finding that a reasonable jury could not have concluded that Plaintiffs' suit was timely filed. Plaintiffs subsequently initiated this appeal, arguing that the district court erred in setting aside the jury's finding that even with the exercise of proper diligence, they could not have had the necessary knowledge to file suit against Dr. Rosado more than a year before they did. We determine that the lawsuit was timely filed and not outside the statute of limitations, reverse the district court's dismissal, vacate the judgment in favor of Defendants, and remand for reinstatement of the jury verdict and for such other proceedings as may be appropriate, consistent with this opinion.

**I.**

This appeal arises from a series of surgeries performed by Dr. Rosado, a neurosurgeon, on Meléndez while she was a resident of Puerto Rico. In 2013, at the age of seventy-two, Meléndez began suffering from severe back pain. Her pain became so severe that she retired from her career as a nurse and sought medical assistance. Prior to consulting Dr. Rosado, Meléndez had unsuccessfully sought the assistance of numerous doctors regarding her pain.

On August 20, 2013, Meléndez first met with Dr. Rosado on the recommendation of a prior treating physician. Dr. Rosado initially attempted to treat Meléndez's pain without surgery, but ultimately diagnosed her with spinal compression and recommended

surgical treatment. Meléndez underwent the recommended surgery in February of 2014 but continued to experience escalating back pain following her operation, which ultimately rendered her bedridden. In March 2014, Dr. Rosado performed a secondary surgery on Meléndez but was again unable to alleviate her pain. Meléndez remained bedridden following the second surgery despite ongoing physical therapy.

Ultimately Meléndez's son Herminio, who is not a party to this action, contacted Meléndez's other son, Plaintiff Ramos, for support. Ramos was at the time employed in the healthcare industry in Georgia. In June of 2014, Ramos traveled to Puerto Rico to meet with Dr. Rosado because of his concern regarding his mother's ongoing back pain and worsening health following her surgeries. Ramos and Meléndez met with Dr. Rosado on June 6, 2014, at which time Dr. Rosado initially confused Meléndez's case with another surgery, but ultimately identified Meléndez and discussed her ongoing pain and care with Ramos. After the meeting, Meléndez was again hospitalized, and Dr. Rosado recommended a third surgery. Rather than agreeing to a third surgery, Ramos chose to bring Meléndez with him to Georgia for further treatment and requested her records from Dr. Rosado to facilitate a transfer of care. Dr. Rosado agreed.

Nevertheless, Dr. Rosado did not transmit copies of Meléndez's records to either Ramos or Meléndez at that time.

Rather, it was only after multiple messages to Dr. Rosado personally and to his office, along with a complaint regarding the delay to the Medical Disciplinary and Licensing Board and associated hearing before the Municipal Court of San Juan, that Herminio received a copy of Meléndez's records on August 22, 2014. Upon Ramos's receipt of the records, Meléndez traveled to Georgia in September 2014 to stay with Ramos and seek additional medical treatment.[2]

In Georgia, Meléndez sought treatment at the Emory Health Emergency Room, and with an orthopedist at the Emory Spine Center, before ultimately obtaining a referral to Dr. Daniel Refai. She had her first appointment with Dr. Refai in November 2014. Dr. Refai reviewed Meléndez's MRI, which had been performed by the referring physician, and recommended a third surgery on Meléndez's spine. While Meléndez remained hesitant to undergo another surgery she ultimately agreed, and after receiving medical clearance was operated upon by Dr. Refai on December 18, 2014. Following this third surgery, while her pain was not eradicated, Meléndez experienced substantial improvement such that she was able to lie flat, sit, and walk with assistance. She was instructed by the hospital to strictly limit her motion for six weeks following the

---

[2] Meléndez became a citizen of Georgia. Ramos was already a citizen of Georgia, the Defendants are both citizens of Puerto Rico, and the amount in controversy exceeds $75,000. Accordingly, diversity jurisdiction exists. See 28 U.S.C. § 1332(a).

surgery, and ultimately underwent physical therapy through June of 2015.

Dr. Refai continued to see Meléndez regularly until November 2015 as part of his standard post-surgery recovery procedure. At her last appointment, in November of 2015, Meléndez and Ramos asked Dr. Refai to review the records from Meléndez's earlier surgeries. He agreed, and in mid-2016 Plaintiffs provided Dr. Refai with the translated records. Shortly thereafter, in September of 2016, Dr. Refai provided Plaintiffs with a report stating his opinion that Dr. Rosado had negligently operated upon Meléndez.

After receiving Dr. Refai's report, Plaintiffs filed a complaint in United States District Court against Defendants on October 19, 2016. The case proceeded to a trial on the merits, the United States Magistrate Judge presiding. At the close of Plaintiffs' case-in-chief, and then again at the end of Defendants' case-in-chief, Defendants moved pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law. They argued that Plaintiffs' claims were time-barred; that Plaintiffs had not acted diligently in investigating and/or pursuing their claims; and that Plaintiffs had not presented legally sufficient evidence to establish their claims. After both Rule 50 arguments, the court advised Defendants that their Rule 50 motions would be held in abeyance. The case was submitted to the jury. Because Dr. Rosado

had raised a defense of statute of limitations, the instructions for the jury included an instruction on the statute of limitations for malpractice. On March 15, 2019, the jury returned a verdict form where it determined that the case was not time barred, finding that Plaintiffs proved by a preponderance of the evidence that they exercised due diligence to acquire the knowledge necessary to their claim and nevertheless did not obtain the relevant knowledge until at least October 19, 2015. On that form, the jury also returned a verdict against Dr. Rosado on Plaintiffs' claim of medical malpractice, finding total compensatory damages in the sum of $250,000. Judgment was entered accordingly. On April 24, 2019, seeking to set aside the verdict, Defendants filed a Motion for Judgment as a Matter of Law, or in the alternative for a new trial or remittitur, which Plaintiffs opposed. In an Opinion and Order, the district court granted Defendants' motion on August 20, 2019, and set aside the jury's verdict, concluding that a reasonable jury could not have found that the claim against Dr. Rosado was timely filed. This rendered Defendants' alternative motion moot. Judgment was entered dismissing the case with prejudice.

Plaintiffs timely appealed on September 10, 2019.

**II.**

The Puerto Rico statute of limitations for medical malpractice is one year.[3] Villarini-Garcia v. Hosp. Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993) (quoting P.R. Laws Ann. tit. 31, § 5298 (1955)). The statutory period begins to run once the plaintiff "possesses, or with due diligence would possess, information sufficient to permit suit." Id. For accrual purposes, that information includes not only (1) the fact of the plaintiff's injury, but also (2) knowledge of "the author of the injury."[4] Colón Prieto v. Géigel, 15 P.R. Offic. Trans. 313, 330 (1984) (quoting I. A. Borrell y Soler, Derecho Civil Español 500 (Bosch ed., 1955)). We have interpreted this latter requirement to extend beyond "an awareness of some ill effects resulting from an operation by a particular doctor." Galarza v. Zagury, 739 F.2d

---

[3] The parties agree that the case is before us under diversity jurisdiction, and thus Puerto Rico substantive law applies. That is correct. Sitting in diversity, the court must apply the "[Commonwealth's] substantive law and federal rules for procedural matters." Alejandro-Ortiz v. P.R. Elec. Power Auth., 756 F.3d 23, 26 (1st Cir. 2014). Because in Puerto Rico, the statute of limitations is not a procedural matter but rather an issue of substantive law, see Vera v. Dr. Bravo, 161 D.P.R. 308, 321, __ P.R. Offic. Trans. __, __ (2004), Commonwealth law applies.

[4] The verdict form below required the jury to find by a preponderance of the evidence whether Plaintiffs had the necessary knowledge to file suit at any time before October 19, 2015, or whether they could have had the necessary knowledge before that date if they exercised proper diligence.

20, 24 (1st Cir. 1984). Rather, a putative plaintiff must have knowledge that "the injury could be considered a tort rather than an expected side effect." Espada v. Lugo, 312 F.3d 1, 4 (1st Cir. 2002). "If a plaintiff is not aware of some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury, the statute of limitation will be tolled." Id. (quoting Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13-14 (1st Cir. 1997))

Under Puerto Rico law, either actual knowledge (where a claimant is aware of the relevant facts underlying her potential claim) or constructive knowledge, often referred to as "deemed knowledge," (where she would have been aware of such facts, had she engaged in due diligence) can trigger the statute of limitations. Rodriguez-Suris, 123 F.3d at 14.[5]

In determining a plaintiff's knowledge, the relevant inquiry is whether a putative plaintiff knew or with due diligence would have known "the facts that gave rise to the claim, not their full legal implications." Villarini-Garcia, 8 F.3d at 85 (citing Osborn v. United States, 918 F.2d 724, 731 (8th Cir. 1990)). Where

_____

[5] An exception, not applicable in this case, exists where "a diligent plaintiff reasonably relies upon representations made by a tortfeasor that her symptoms are not the result of a negligent or otherwise tortious act," which permits such a plaintiff to toll the limitation period regardless of her knowledge of the underlying injury and its cause. Rodriguez-Suris, 123 F.3d at 16-17 (citing Colón Prieto, 15 P.R. Offic. Trans. at 329-30; Villarini-Garcia, 8 F.3d at 85-86).

a plaintiff's ignorance of a potential cause of action is caused only by her failure to timely consult an attorney, the statute of limitations is not tolled. Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 593-94 (1st Cir. 1989). Similarly, where a plaintiff is aware of a potentially tortious injury but makes no effort to ascertain its source, she is not excused in delaying a potential claim. Id.; Espada, 312 F.3d at 4. Rather, "[o]nce a plaintiff is made aware of facts sufficient to put her on notice that she has a potential tort claim, she must pursue that claim with reasonable diligence, or risk being held to have relinquished her right to pursue it later, after the limitation period has run." Rodriguez-Suris, 123 F.3d at 16 (citing Villarini-Garcia, 8 F.3d at 85). As we have previously noted, the requirement that actual or constructive knowledge trigger the statutory period "is designed to accommodate a plaintiff's interests but not to make them trump all others." Villarini-Garcia, 8 F.3d at 85. Accordingly, "there is nothing unfair in a policy that insists that the plaintiff promptly assert her rights" where she knew or with due diligence would have known the relevant facts more than a year before bringing her claim. Id. (citing Aldahonda-Rivera, 882 F.2d at 593).

Where, as here, an action was instituted more than one year after the alleged tortious harm, the plaintiff bears the burden of showing her claim was timely filed. Torres v. E.I.

DuPont De Nemours & Co., 219 F.3d 13, 19 (1st Cir. 2000). Where timeliness hinges on the presence or absence of due diligence, and constructive rather than actual knowledge, it raises "a normative question of how much diligence should be expected of a reasonable lay person." Villarini-Garcia, 8 F.3d at 84. Accordingly, "the question [of] whether the plaintiff has exercised reasonable diligence is typically given to the jury, 'even where no raw facts are in dispute,' because 'the issues of due diligence and adequate knowledge are still ones for the jury so long as the outcome is within the range where reasonable men and women can differ.'" Espada, 312 F.3d at 4 (quoting Villarini-Garcia, 8 F.3d at 87). Such a question may only be withdrawn from the jury where a reasonable jury could not, given the evidence, "find that the plaintiff lacked knowledge despite due diligence." Villarini-Garcia, 8 F.3d at 87.

## III.

We review the grant of judgment as a matter of law de novo. Grande v. St. Paul Fire & Marine Ins. Co., 436 F.3d 277, 280 (1st Cir. 2006). Thus, we consider on appeal whether the evidence before the jury "could lead a reasonable person to only one conclusion" – namely, that Plaintiffs had either actual or constructive knowledge of a potential claim prior to October 19, 2015. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993) (quoting Hiraldo-Cancel v. Aponte, 925 F.2d 10, 12 n.2 (1st Cir.

- 11 -

1991)).  To affirm the district court, we must therefore conclude that no reasonable jury could find that Plaintiffs (1) exercised due diligence to acquire the knowledge needed to sue and (2) nevertheless did not obtain that knowledge until sometime after one year prior to filing suit.

Because Plaintiffs filed suit on October 19, 2016, the timeliness of that action depends on a date of accrual no earlier than October 19, 2015.  Plaintiffs contend that the jury reasonably determined that the statutory period had not expired and posit accrual upon either their request that Dr. Refai review Meléndez's records in November 2015, or their receipt of his expert report on September 21, 2016.  Plaintiffs argue that it was not unreasonable for the jury to conclude that Meléndez and Ramos acted with reasonable diligence in focusing initially on Meléndez's rehabilitation, and only upon the completion of that rehabilitation requesting Dr. Refai's assistance in the review of Meléndez's medical records.  In support of the jury's finding, Plaintiffs note that they did not initially suspect any malpractice in Dr. Rosado's treatment of Meléndez, that they only requested Meléndez's medical records from Dr. Rosado to assist in her ongoing treatment, and that they discussed the particulars of Meléndez's

earlier surgeries with Dr. Refai even before requesting that he review her medical records in November of 2015.

Conversely, Defendants argue that Meléndez and Ramos were aware of facts sufficient to put them on notice of a potential claim prior to October 19, 2015, and that they failed to pursue that claim with reasonable diligence. Defendants specifically identify three potential dates by which Plaintiffs had knowledge of both Meléndez's injury and the author of that injury: (1) March 24, 2014, the date of Meléndez's second surgery; (2) June 2014, on whatever date Plaintiffs, Herminio and Meléndez's husband collectively determined that Meléndez should seek treatment in Georgia; or (3) August 22, 2014, the date on which Plaintiffs received Meléndez's medical records from Dr. Rosado. Defendants further allege that there is no evidence whatsoever of any affirmative diligence undertaken by Plaintiffs in the fifteen months between their receipt of Meléndez's medical records, in August 2014, and their request that Dr. Refai review those medical records in November 2015.

These arguments derive from much of the same evidence but require analysis through the distinct lenses of actual and constructive knowledge. Accordingly, we first consider Defendants' contention that Plaintiffs' knowledge of the information necessary for suit (in either March, June, or August of 2014) precludes a reasonable jury from finding that their claim

- 13 -

was timely filed.  We then consider Plaintiffs' argument that the question of constructive or actual knowledge should properly be reserved to the jury, and Defendants' counterargument that Plaintiffs' lack of due diligence between August of 2014 and November of 2015 also precludes a reasonable jury from finding their claim was timely filed.  We conclude that a reasonable jury could find that Plaintiffs exercised due diligence in investigating their potential claim and nevertheless did not have "sufficient information to permit suit," Villarini-Garcia, 8 F.3d at 84, in advance of the one-year statutory period.

To substantiate their claim that Plaintiffs were actually aware of facts sufficient to put them on notice of their claim against Dr. Rosado after Meléndez's second surgery, Defendants rely primarily on testimony that Meléndez was in pain following the surgery.  In particular, they point to Meléndez's own testimony that her life "changed entirely" during the period following the second surgery.  They note that Meléndez was unable to care for herself or perform her daily activities after the second surgery and conclude that Plaintiffs were therefore aware of the "outward physical manifestations" of Dr. Rosado's negligence.

We find this argument uncompelling.  There is no indication in Meléndez's testimony that the change in her quality of life was sudden or otherwise suspicious.  As already noted,

- 14 -

Meléndez was bedridden even before her second surgery. Furthermore, when describing her pain following the second surgery Meléndez specifically highlighted the intensive care she required following her discharge from the hospital in May of 2014, a month and a half after her second surgery. Under the circumstances, a reasonable person in Meléndez's situation could have believed that her increasingly unmanageable pain was simply a continuation of the decline which she was already suffering, and which prompted her to seek medical assistance from Dr. Rosado in the first place. We conclude that a reasonable jury could find that Meléndez had no knowledge of her potential claim insofar as she was aware of neither an additional injury following her surgery, nor its potentially tortious origin.

In the alternative, Defendants suggest that Plaintiffs were aware of facts sufficient to put them on notice of their claim upon Meléndez's departure from Dr. Rosado's care in June of 2014. To substantiate their argument, Defendants highlight Herminio's testimony before the court, including his statements that following Meléndez's second surgery she was bedridden and in severe pain, and that her family no longer trusted Dr. Rosado. Defendants also point to Ramos's testimony that he initially met with Dr. Rosado because Meléndez's condition was worsening, and because her pain had increased rather than decreased after her second surgery. These statements and others are presented as evidence that

Plaintiffs knew of Meléndez's injury, knew that it was a result of her surgeries at the hands of Dr. Rosado, and knew that the injury could be considered tortious rather than a mere side effect.

We again find Defendants' argument uncompelling. In light of our prior decisions, the statements made by Plaintiffs and Herminio do not preclude a reasonable jury from finding that Plaintiffs had no knowledge of their claim as of June 2014. Not only could Plaintiffs reasonably have concluded that Meléndez's ongoing pain was a result of her initial, pre-surgery spinal problems, they also had no basis for believing any further injury (if identified) was tortious in nature. It is well-established that a plaintiff may "reasonably rel[y] upon representations made by a tortfeasor that her symptoms are not the result of a negligent or otherwise tortious act," even where she is aware of her underlying injury and its cause. Rodriguez-Suris, 123 F.3d at 16-17 (first citing Colón Prieto, 15 P.R. Offic. Trans. at 329-30; and then citing Villarini-Garcia, 8 F.3d at 85-86). As Plaintiffs note, Dr. Rosado warned Meléndez in advance of her operations that side effects including severe pain, re-compression of the spine, or even paralysis could all result from surgical intervention. Indeed, Ramos testified to being apprehensive about the outcome of the surgeries even before Meléndez underwent her first operation simply because he was aware that spinal surgery is a very delicate process. While warnings prior to a risky surgery do not rise to

- 16 -

the level of assurances that an operation was non-negligently performed, they nevertheless provide a basis for a reasonable person to assume that, insofar as an identifiable injury results from surgery, that injury is not potentially tortious in origin.

Furthermore, Plaintiffs provide a reasonable alternative explanation for their loss of trust in Dr. Rosado. They argue that a jury could reasonably infer that Meléndez and Ramos lost trust in Dr. Rosado because he failed to visit Meléndez during her post-surgery hospitalization, or because he confused her with another patient when she visited his office for a follow up appointment. We agree. A patient who decides that her current doctor is unsuitable, untrustworthy, or simply unlikeable may nevertheless not suspect him of malpractice. Similarly, a patient warned of the many risks of a medical procedure and suffering only an escalation of her original condition following the procedure, may reasonably not suspect that the procedure itself caused some tortious harm. We therefore conclude that a reasonable jury could find that Plaintiffs had no knowledge of their potential claim when they withdrew Meléndez from Dr. Rosado's care in June of 2014.

Nor do we accept Defendants' argument that Plaintiffs had knowledge of their potential claim by the time they received Meléndez's records from Dr. Rosado on August 22, 2014. Defendants support this argument by reference to the testimony already considered above, and to statements by Plaintiffs' counsel alone

at sidebar that trial testimony on Plaintiffs' efforts to obtain Meléndez's medical records was relevant to the statute of limitations. The statements of counsel at sidebar are not evidence before the jury and are therefore not relevant to the disposition of a motion for judgment as a matter of law. See Fed. R. Civ. P. 50(a)(1); see also, e.g., United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir. 1987) (discussing the sufficiency of jury instructions regarding statements of counsel). Defendants therefore suggest no basis for their proposed August 22, 2014, date that has not already been considered and rejected with respect to the March and June dates. Accordingly, we determine that a reasonable jury could have concluded that Plaintiffs lacked the requisite knowledge of Meléndez's injury, its author, and its potentially tortious nature as of their acquisition of Meléndez's medical records.

We move now to the question of whether Plaintiffs had constructive knowledge of their potential claim more than one year before filing suit. To determine that they had such knowledge as a matter of law, we must examine whether a reasonable jury could find that Plaintiffs exercised due diligence and yet were not aware (1) of Meléndez's injury, (2) that the injury was caused by Dr. Rosado, and (3) that the injury was potentially tortious. See Colón Prieto, 15 P.R. Offic. Trans. at 330-31; Espada, 312 F.3d at 4. We begin by considering, in light of the circumstances and

- 18 -

arguments recounted above, whether Plaintiffs could reasonably be found to have exercised due diligence prior to October 19, 2015.

The diligence required to preclude a finding that a plaintiff's claim is time-barred depends on the plaintiff's specific situation. In Espada, the plaintiff underwent a mastectomy to treat her breast cancer, including the removal of numerous lymph nodes, and subsequently suffered persistent swelling in her arm. 312 F.3d at 2—3. She was reassured by her physician that the swelling was normal, despite receiving no warning prior to the surgery that it was a potential side effect. Id. at 4. The plaintiff sought treatment for her swelling (diagnosed as lymphedema) from other physicians and ultimately learned, two years after her surgery, that it was caused by the removal of her lymph nodes. Id. at 5. While the plaintiff was aware "more than one year before the suit was filed that a serious and persistent affliction had followed her surgery and that [her doctor] was responsible for the surgery," we determined that her claim was not time-barred as a matter of law. Id. We indicated specifically that the plaintiff (1) was initially entitled to rely on her doctor's assessment that the operation was properly performed, and (2) had no reason to suspect malpractice until she was alerted of the possibility by a medical professional, given

that lymphedema could result even from non-negligent surgeries. Id.

In Villarini-Garcia, the plaintiff underwent a mole removal surgery on her back during which her physician, without her consent, removed a portion of her muscle tissue. 8 F.3d at 83. She was reassured that the removal was normal and that she would suffer "no lasting harm," but nevertheless developed debilitating arm pain which continued in the years following her surgery. Id. Three years after her surgery, she consulted a number of doctors about her persistent pain, before ultimately receiving a diagnosis suggesting malpractice and filing suit. Id. at 84. We determined that her negligence claim was not time barred as a matter of law because (1) she was initially entitled to rely on her doctor's assurances that she would suffer no lasting harm, and (2) she could reasonably have lacked knowledge of her negligence claim until she was informed of its existence by a medical professional, despite failing specifically to investigate whether the mole removal surgery could be the source of her pain. Id. at 86.

Plaintiffs argue, and we agree, that the instant case is largely comparable to Espada and Villarini-Garcia. On their face, the injuries suffered by Meléndez were if anything less apparent than those suffered by the plaintiffs in Espada and Villarini-Garcia. Neither surgery resulted in an abrupt or identifiable

- 20 -

additional impairment, such as a swollen arm following a mastectomy, or severe arm pain resulting from the removal of a mole on the back. Espada, 312 F.3d at 3; Villarini-Garcia, 8 F.3d at 83. Rather, they were of like kind and manifestation to Meléndez's original condition. While Meléndez did experience an increase in her back pain following the surgeries performed by Dr. Rosado, she had been experiencing increasing pain for some time, so much so that she had within the prior year found herself unable to work, sit, or even stand for extended periods. Indeed, Meléndez was initially able to continue managing her pain with medication following the first surgery, and only after some time had passed did her pain worsen to the point where she was confined to her bed. Similarly, she was bedridden both before and after her second surgery. Finally, while Meléndez did not receive direct assurances from Dr. Rosado that her continuing pain was normal or nothing to worry about, as did the Espada and Villarini-Garcia plaintiffs, she nevertheless was clearly warned that the surgeries could be unsuccessful or potentially result in additional pain even without any negligence by Dr. Rosado.

Furthermore, the diligence undertaken by Meléndez is comparable to that pursued by the plaintiffs in Espada and Villarini-Garcia. We determined in Espada that "[i]t would surely be permissible for a jury to find that [the plaintiff] was diligent in her investigation of the cause of her lymphedema by

communicating with the National Lymphedema Network and by meeting with other doctors in her attempt to discover the cause of her lymphedema." 312 F.3d at 4-5. In Villarini-Garcia, we noted that while the plaintiff "might be faulted for not specifically asking the doctors" she saw following her surgery "whether the operation had caused the new pain, at least some of these specialists were aware of the operation but none of the varying diagnoses she received pointed to the operation as a possible cause." 8 F.3d at 86. We therefore concluded that "a reasonable factfinder . . . could find that [the plaintiff] did exercise due diligence" as to her potential claim, but "the final ingredients for the [negligence] claim did not fall into place until after the pain persisted and [a new physician] gave his opinion." Id. Similarly, Meléndez consulted multiple physicians regarding her persistent back pain after her first two surgeries. Despite knowing of her prior surgeries, even Dr. Refai did not suggest that Meléndez had a potential claim for malpractice until he fully reviewed her translated medical records.

We conclude that a reasonable jury could find that Plaintiffs had neither actual nor constructive knowledge at any time prior to her third surgery at the hands of Dr. Refai. First, the basis for actual knowledge is not notably different between Plaintiffs' acquisition of Meléndez's records in August of 2014 and their pre-surgery consultations with Dr. Refai in December of

that year.  Meléndez remained bedridden from before her second surgery until her third surgery, and her diagnosis by Dr. Refai was  the same diagnosis of spinal compression she had initially received from Dr. Rosado.  Indeed, the treatment suggested by Dr. Refai (a third surgery) was also the treatment suggested by Dr. Rosado.  Our analysis of the facts prior to the third surgery therefore mirrors our analysis with respect to Defendants' suggested June and August dates, and we conclude that a reasonable jury could find that Plaintiffs had no actual knowledge of their potential claim prior to Meléndez's third surgery.

Second, there is no basis for concluding that a reasonable jury could not find Plaintiffs lacked constructive knowledge immediately prior to Meléndez's third surgery.  Our decisions in Espada and Villarini-Garcia demonstrate that even where an injury is readily identifiable, and the author of the injury is readily known, a plaintiff can be found to exercise adequate diligence where she diligently seeks treatment for her injury from additional physicians.  Meléndez did exactly that. While Meléndez was not directly reassured by Dr. Rosado that her first two surgeries were non-negligent, she nevertheless had reason to suspect, like the Espada plaintiff, that injury could result even from non-negligently performed surgery.  See 312 F.3d at 5.  Indeed, we have previously noted that a putative plaintiff must have knowledge that "the injury could be considered a tort"

and not merely "an expected side effect." Id. at 4. That it is possible to believe that Meléndez could have done more to investigate her injury does not preclude a reasonable jury from finding that she was nevertheless reasonably diligent under the law. We therefore conclude that a reasonable jury could find that Plaintiffs exercised due diligence but were nevertheless not aware of the facts necessary to establish a claim at the time of Meléndez's third surgery.

The district court found that even if Plaintiffs had no actual knowledge of their potential claim as of the proposed dates, they at least had constructive knowledge following Meléndez's successful third surgery. Indeed, the district court concluded that Meléndez's recovery following the third surgery would lead a reasonable person to question the first two surgeries and seek answers. Rather than seeking answers, however, the district court found – and Defendants argue on appeal – that Plaintiffs engaged in no due diligence prior to their request that Dr. Refai review Meléndez's medical records in November of 2015, and therefore failed to satisfy their burden with respect to constructive knowledge.

While plausible, this line of reasoning is not so persuasive that a reasonable jury could not disagree. First, as Plaintiffs point out, given the potential complications of spinal decompression surgery the jury could have reasonably concluded

that Meléndez's improvement did not raise suspicion that the prior surgeries were unsuccessful due to medical malpractice. Just as a jury could find Plaintiffs acted reasonably in assuming Meléndez's negative surgical outcomes were expected and non-negligent, there is no clear reason why a jury could not find similar grounds for Plaintiffs' acceptance of positive surgical outcomes. There is no evidence that either of Meléndez's surgeons indicated that the unsuccessful first two surgeries were in any way suspicious or out of the ordinary. Rather, Dr. Refai even informed Meléndez that there would be significant risks to a third surgery, thus providing a further ground for Plaintiffs to conclude that spinal surgeries are simply often unsuccessful. Second, although Meléndez "did remarkably well" after her third surgery, it is not the case that the outcome was so radically different as to preclude a finding that they lacked constructive knowledge. After her first surgery, for example, Meléndez felt "okay" and could manage her pain with medication as she had done previously. Likewise, after her successful third surgery, it still took Meléndez six weeks to be able to walk three quarters of a mile. While Meléndez could have questioned the first two surgeries in light of the third, a plaintiff's failure to act optimally does not necessarily render her behavior unreasonable. See Villarini-Garcia, 8 F.3d at 86 (noting that plaintiff "might be faulted" for failing to inquire about the relationship between her earlier

surgery and current injury, but nevertheless declining to grant judgment as a matter of law on the question of timeliness). A jury could nevertheless conclude that a reasonable person would withhold judgment as to the efficacy of the third surgery until some time had passed and Meléndez was farther along the road to full recovery.

Finally, although Defendants allege that Plaintiffs engaged in no medical consultations or similar due diligence even in the months following her third surgery, this is not entirely true. Rather, Meléndez met with Dr. Refai "at regular intervals" following the third surgery to discuss her recovery. Once it became apparent that Meléndez's third surgery was indeed successful, Plaintiffs proactively sought Dr. Refai's professional opinion regarding the standard of care followed by Dr. Rosado in Meléndez's first and second surgeries. Although eleven months elapsed between Meléndez's third surgery and Plaintiffs' request that Dr. Refai review her medical records, those eleven months involved both a lengthy recovery process (during which it took at least a month and a half for Meléndez to even walk a reasonable distance) and consistent meetings with Dr. Refai about the very condition that this action addresses. Given the precedent of Villarini-Garcia, where a plaintiff's meetings with various specialists for treatment of her arm pain over a four-year period constituted adequate due diligence even where she knew that she

- 26 -

began suffering new and unusual pain following a surgical intervention, it is not clear that Meléndez's ongoing pursuit of treatment for her own back pain could not constitute due diligence under the relevant law.  8 F.3d at 83, 86.

Nor is the fact that there are plausible arguments against Plaintiffs' exercise of due diligence dispositive.  It is not the task of Plaintiffs to prove beyond a shadow of a doubt that their diligence was adequate and that they therefore lacked the constructive knowledge that would time-bar their complaint.  Rather, Plaintiffs must only show that the question of their knowledge is one on which "reasonable men and women can differ."  Id. at 87.  If a reasonable jury could have found Plaintiffs' claim was timely filed, we must reverse the district court's issuance of judgment as a matter of law.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009).  Under the relevant case law, a reasonable jury could indeed have found that Plaintiffs exercised adequate diligence to preclude a finding of constructive knowledge as of Meléndez's final post-operative appointment with Dr. Refai in November of 2015.

**CONCLUSION**

Let us be perfectly clear.  We do not hold that the record in this case compels a finding that Plaintiffs complied with the statute of limitations. We recognize that there is enough evidence on both sides of the limitations issue such that the

district court quite properly determined in response to Defendants' initial Rule 50 motions that the issue should, in the first instance, be left to the jury. We conclude that a reasonable jury could have found that, despite exercising due diligence to acquire the knowledge needed to sue, Plaintiffs nevertheless did not obtain that knowledge until sometime after one year prior to filing suit. Accordingly, the dismissal of the case is reversed, the judgment for Defendants is vacated, and the case is remanded to the district court for reinstatement of the verdict, consideration of defendants' alternative motion for a new trial or remittitur, and such other proceedings as may be appropriate, consistent with this opinion. Costs are taxed in favor of plaintiffs-appellants.

**So ordered**.